**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| SAM DONG OHIO, INC.; | ) | CASE NO.: 25-1364 |
| | ) | |
| MARK WATKINS; | ) | DISTRICT JUDGE _____ |
| | ) | |
| TRACY PABST; and | ) | MAGISTRATE JUDGE _____ |
| | ) | |
| RANDY KAISER; | ) | **COMPLAINT** |
| | ) | |
|     Plaintiffs, | ) | DEMAND FOR JURY TRIAL |
| | ) | |
| v. | ) | |
| | ) | |
| THE HANOVER INSURANCE | ) | |
| COMPANY; | ) | |
| | ) | |
|     Defendant. | ) | |

Plaintiffs, Sam Dong Ohio, Inc. ("Sam Dong"); Mark Watkins; Tracy Pabst; and Randy Kaiser, for their Complaint against Defendant, The Hanover Insurance Company ("Hanover"), allege as follows:

## NATURE OF THE ACTION

1.    This is an insurance coverage action for declaratory judgment and breach of contract arising from Hanover's breaches of its legal duties owed to Plaintiffs, its insureds, with respect to losses arising from employment-discrimination claims alleged by Scott A. Ekleberry.

## THE PARTIES

2.    Plaintiff Sam Dong Ohio, Inc. is an Ohio corporation incorporated under the laws of the State of Ohio and with its principal place of business in Delaware, Ohio.

3.    Plaintiff Mark Watkins is a natural person who is a resident of Franklin County, Ohio.

4.    Plaintiff Tracy Pabst is a natural person who is a resident of Franklin County, Ohio.

1

5.      Plaintiff Randy Kaiser is a natural person who is a resident of Delaware County, Ohio.

6.      Upon information and belief, Defendant, The Hanover Insurance Company, is a New Hampshire corporation incorporated under the laws of the State of New Hampshire and with its principal place of business in Worcester, Massachusetts.

## JURISDICTION

7.      Under 28 U.S.C. § 1332, this Court has original jurisdiction over this civil action because Plaintiffs have suffered damages in excess of $75,000 due to Hanover's breaches of contract and the matter in controversy therefore exceeds the sum or value of $75,000. *See* 28 U.S.C. § 1332(a) (2025).

8.      Under 28 U.S.C. § 1332, this Court also has original jurisdiction over this civil action because it is between Citizens of different States. *See* 28 U.S.C. § 1332(a)(1) (2025).

## VENUE

9.      Under 28 U.S.C. § 1391, proper venue for this civil action lies in this Court because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. § 1391(b)(2) (2025).

10.     Under Local Rules 82.1(b) and 82.1(e), proper venue for this civil action also lies in this Court because it serves the counties in which a substantial part of the events or omissions giving rise to the claim occurred. *See* S.D. Ohio Civ. R. 82.1(b); *see also* S.D. Ohio Civ. R. 82.1(e).

## FACTUAL BACKGROUND

11.     In relevant part, Hanover sold a series of claims-made Private Company Advantage Insurance Policies to Sam Dong for policy periods from 2018-19, 2019-20, 2020-21, and 2021-22.

## THE POLICIES

### The 2018-19 Policy

12.     Hanover sold Private Company Advantage Insurance Policy No. LHA-A068567-07 to Sam Dong for the policy period from June 1, 2018 to June 1, 2019 (the "2018-19 Policy"). A copy of the 2018-19 Policy is attached as **Exhibit A**.

### The 2019-20 Policy

13.     Hanover sold Private Company Advantage Insurance Policy No. LHA-A068567-09 to Sam Dong for the policy period from June 1, 2019 to June 1, 2020 (the "2019-20 Policy"). A copy of the 2019-20 Policy is attached as **Exhibit B**.

14.     The 2019-20 Policy provided substantially similar coverage to the 2018-19 Policy.

15.     The 2019-20 Policy provided a Maximum Aggregate Limit of Liability of $1 million under its Employment Practices Liability ("EPL") Coverage Part.

16.     In the Insuring Agreement of the EPL Coverage Part of the 2019-20 Policy, Hanover agreed to pay on Sam Dong's behalf "**Loss** which the **Insured** is legally obligated to pay due to an **Employment Claim** or a **Third Party Claim** first made against the **Insured** during the **Policy Period**, or the Extended Reporting Period if applicable" (bolded terms throughout this section are specially defined in the Policies).

17.     In relevant part, the 2019-20 Policy defined **Loss** to mean "**Defense Expenses** and the amount the **Insured** is legally obligated to pay as a result of a **Claim**," including "[m]onetary judgments, awards or settlements, pre-judgment interest and post-judgment interest, back and front pay, [and] compensatory damages" and "[p]unitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the law of the jurisdiction most favorable to the

insurability of such damages where such jurisdiction has a substantial relationship to the **Insured**, the **Insurer**, or to the **Claim** giving rise to such damages[.]"

18.     The 2019-20 Policy defined **Defense Expenses** to mean "the reasonable and necessary legal fees and expenses including attorney fees and expert fees incurred by the **Insurer** or the **Insured** (other than regular or overtime wages, salaries, fees or benefits of **Insured Individuals**) in the investigation, defense, settlement and appeal of a **Claim**, including but not limited to cost of consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds regarding such **Claim**."

19.     The 2019-20 Policy defined **Insured** to include any **Insured Entity**.

20.     By endorsement, Hanover amended the 2019-20 Policy to include Sam Dong as an **Insured Entity**.

21.     In relevant part, the 2019-20 Policy defined **Claim** to include an **Employment Claim**.

22.     In relevant part, the 2019-20 Policy defined **Employment Claim** to include any "[f]ormal administrative or regulatory proceeding commenced by the filing of charges, formal investigative order or similar document, including a proceeding before the Equal Employment Opportunity Commission or any similar governmental agency" which is brought and maintained by or on behalf of a past, present or prospective **Employee** of an **Insured Entity** against an **Insured** for an **Employment Wrongful Act**.

23.     In relevant part, the 2019-20 Policy defined **Employment Wrongful Act** to mean any actual or alleged **Discrimination**, **Retaliation**, **Wrongful Termination**, and Breach of an **Employment Contract**.

24. In relevant part, the 2019-20 Policy defined **Discrimination** to mean "any violation of employment discrimination laws including any actual, alleged or constructive employment termination, dismissal, or discharge, employment demotion, denial of tenure, modification of any term or condition of employment, any failure or refusal to hire or promote, or any limitation, segregation or classification of any **Employee**" in any way that would deprive or tend to deprive any person of employment opportunities or otherwise affect his or her status as an **Employee** based on such person's disability or other status that is protected pursuant to any federal, state, or local statutory law or common law anywhere in the world.

25. The 2019-20 Policy defined **Retaliation** to mean "any actual or alleged **Wrongful Termination** or other adverse employment action against an **Employee** on account of such **Employee's** exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat to disclose to a superior or to any governmental agency alleged violations of the law, or on account of the **Employee** having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law."

26. The 2019-20 Policy defined **Wrongful Termination** to mean "the actual or constructive termination of an employment relationship between an **Employee** and an **Insured Entity** in a manner or for a reason which is contrary to applicable law or public policy or in violation of an **Employment Contract**."

27. The 2019-20 Policy defined **Employment Contract** to mean "any express or implied employment agreement regardless of the basis in which such agreement is alleged to exist, other than a collective bargaining agreement."

28. In relevant part, the Reporting provision of the 2019-20 Policy states that "solely with respect to an **Employment Claim** that is brought as a formal administrative or regulatory

proceeding commenced by the filing of charges, formal investigative order or similar document, an **Insured** shall give written notice during the **Policy Period**[.]"

29.     Sam Dong paid the premium for the 2019-20 Policy.

**The 2020-21 Policy**

30.     Hanover sold Private Company Advantage Insurance Policy No. LHA-A068567-10 to Sam Dong for the policy period from June 1, 2020 to June 1, 2021 (the "2020-21 Policy"). A copy of the 2020-21 Policy is attached as **Exhibit C**.

31.     The 2020-21 Policy provided substantially similar coverage to the 2019-20 Policy.

32.     In key part, the 2020-21 Policy defined **Insured** to mean "any **Insured Individual** or **Insured Entity**."

33.     In key part, the 2020-21 Policy defined **Insured Individual** to mean "any past, present or future **Executive** or **Employee** (including part-time, seasonal, leased or temporary employees), intern or volunteer of the **Insured Entity** while acting solely within his or her capacity as such on behalf of the **Insured Entity**."

34.     In key part, the 2020-21 Policy defined **Employee** to mean "[a] natural person whose labor and services is, was or will be engaged and directed by an **Insured Entity**[.]"

35.     In key part, the 2020-21 Policy defined **Claim** to mean "an **Employment Claim**[.]"

36.     In key part, the 2020-21 Policy defined **Employment Claim** to mean any "[c]ivil proceeding commenced by the service of a complaint or similar pleading[.]"

37.     The Representations and Severability provision of the 2020-21 Policy further states that no fact pertaining to, or knowledge possessed by any **Insured Individual** shall be imputed to any other **Insured Individual**.

38.     Sam Dong paid the premium for the 2020-21 Policy.

**The 2021-22 Policy**

39.     Hanover sold Private Company Advantage Insurance Policy No. LHA-A068567-11 to Sam Dong for the policy period from June 1, 2021 to June 1, 2022 (the "2021-22 Policy"). A copy of the 2021-22 Policy is attached as **Exhibit D**.

40.     The 2021-22 Policy provided substantially similar coverage to the 2020-21 Policy.

41.     In key part, the 2021-22 Policy defined **Insured** to include any **Insured Individual**.

42.     In key part, the 2021-22 Policy defined **Insured Individual** to mean "any past, present or future **Executive** or **Employee** (including part-time, seasonal, leased or temporary employees), intern or volunteer of the **Insured Entity** while acting solely within his or her capacity as such on behalf of the **Insured Entity**."

43.     In key part, the 2021-22 Policy defined **Executive** to mean "[a] duly-elected or appointed director, officer, manager, in-house general counsel, or trustee of the **Insured Entity**," as well as any person holding an equivalent position in any **Insured Entity** incorporated, formed or organized anywhere in the world.

44.     In key part, the 2021-22 Policy defined **Claim** to include an **Employment Claim**.

45.     In key part, the 2021-22 Policy defined **Employment Claim** to mean any "[c]ivil proceeding commenced by the service of a complaint or similar pleading[.]"

46.     The Representations and Severability provision of the 2021-22 Policy further states that no fact pertaining to, or knowledge possessed by any **Insured Individual** shall be imputed to any other **Insured Individual**.

47.     Sam Dong paid the premium for the 2021-22 Policy.

7

## CORRESPONDENCE FROM MR. EKLEBERRY

### The January 25, 2019 Letters

48.     On January 25, 2019, attorney Jason E. Starling, on behalf of Scott A. Ekleberry, sent two letters to Sam Dong (the "January 25, 2019 Letters"). Copies of the January 25, 2019 Letters are attached as **Exhibit E**.

49.     Sam Dong did not receive the January 25, 2019 Letters until January 28, 2019.

50.     The January 25, 2019 Letters alleged that Mr. Ekleberry was employed by Sam Dong as a quality engineer.

51.     The January 25, 2019 Letters further alleged that on October 29, 2018, Sam Dong terminated Mr. Ekleberry's employment for various absences from work.

52.     In addition, the January 25, 2019 Letters alleged that Mr. Ekleberry's absences were due to his Crohn's Disease, "which required him to spend several days in the hospital and required that he see a doctor regularly."

53.     The January 25, 2019 Letters also alleged that Mr. Ekleberry's Crohn's Disease was sufficiently severe that it qualified as a "disability" under the Americans with Disabilities Act (the "ADA") and Sam Dong fired him for being absent due to his disability.

54.     In the January 25, 2019 Letters, Mr. Ekleberry and his attorney further notified Sam Dong that they intended to assert disability discrimination claims for disparate treatment, failure to accommodate, and failure to engage in the interactive process in good faith under the ADA.

55.     In the January 25, 2019 Letters, Mr. Ekleberry's attorney further invited Sam Dong and its counsel to "discuss amicably settling this dispute" and requested that they contact him no later than February 25, 2019.

56.     The January 25, 2019 Letters also placed Sam Dong "on notice of potential litigation" and requested that Sam Dong engage in "preservation efforts."

## THE EKLEBERRY CLAIMS

### The Charge of Discrimination

57.     On August 14, 2019, Mr. Ekleberry filed a Charge of Discrimination – Employment (the "Charge of Discrimination") against Sam Dong with the Ohio Civil Rights Commission (the "OCRC") and the Equal Employment Opportunity Commission (the "EEOC"). A copy of the Charge of Discrimination is attached as **Exhibit F**.

58.     In the Charge of Discrimination, Mr. Ekleberry alleged that he worked as a quality engineer for Sam Dong in Delaware, Ohio.

59.     Mr. Ekleberry further alleged that he suffered from a disability which required him to miss time from work for hospital stays and regular doctor visits.

60.     Mr. Ekleberry also alleged that Sam Dong was "well aware" of his disability and need for treatment, but terminated his employment on October 29, 2018 for absences from work caused by his disability.

61.     In addition, Mr. Ekleberry alleged that he believed he was discriminated against because of his disability in violation of the Americans with Disabilities Act and/or was retaliated against for requesting a reasonable accommodation in violation of the ADA.

62.     On July 14, 2020, the EEOC issued Mr. Ekleberry a Notice of Right to Sue Letter. A copy of the EEOC's Notice of Right to Sue Letter is attached as **Exhibit G**.

**The Delaware County Action**

*The Original Complaint*

63.     On October 9, 2020, Mr. Ekleberry filed an action against Sam Dong, Mark Watkins, and Tracy Pabst in the Court of Common Pleas for Delaware County, Ohio (the "Delaware County Action").  *See Ekleberry v. Sam Dong Ohio, Inc.*, NO. 20-CVH-100456 (Ohio Ct. Com. Pl. originally filed Oct. 9, 2020).

64.     In his original Complaint with Jury Demand (the "Original Complaint"), Mr. Ekleberry alleged that at all relevant times, Mark Watkins had supervisory authority over him and "was an individual responsible for, and/or who participated in, the adverse employment action(s) against Mr. Ekleberry."  A copy of the Original Complaint in the Delaware County Action is attached as **Exhibit H**.

65.     The Original Complaint also alleged that Mark Watkins was a resident of Delaware County, Ohio.

66.     In the Original Complaint, Mr. Ekleberry also alleged that at all relevant times, Tracy Pabst had supervisory authority over him and "was an individual responsible for, and/or who participated in, the adverse employment action(s) against Mr. Ekleberry."

67.     The Original Complaint also alleged that Tracy Pabst was a resident of Delaware County, Ohio.

68.     In the Original Complaint, Mr. Ekleberry also alleged that he has a disability known as Crohn's Disease, which is an inflammatory bowel disease that causes him to suffer symptoms such as abdominal pain and cramping, severe diarrhea, and fever.

69.     In the Original Complaint, Mr. Ekleberry further alleged that in October 2018, he "had to be admitted to the hospital because his Crohn's Disease was causing him to vomit, suffer pain in his stomach, suffer stomach cramps, and suffer symptoms of a fever."

70.     In addition, the Original Complaint alleged that Mr. Ekleberry informed his direct supervisor, Mark Watkins, of both his disability and how it was affecting him.

71.     Furthermore, the Original Complaint alleged that Mr. Eklebery also requested leave under the Family and Medical Leave Act from Tracy Pabst, "informing her of the disability and how it was affecting him."

72.     The Original Complaint further alleged that on October 29, 2018, Mr. Ekleberry returned to work after being hospitalized due to his Crohn's Disease.

73.     The Original Complaint also alleged that Sam Dong, Mark Watkins, and Tracy Pabst terminated Mr. Ekleberry for his absences caused by his Crohn's Disease.

74.     The Original Complaint asserted causes of action against Sam Dong, Mark Watkins, and Tracy Pabst for Disability Discrimination – Termination of Employment, Regarded-As Disability Discrimination – Termination of Employment, Disability Discrimination – Failure to Accommodate, Disability Discrimination – Failure to Engage in the Interactive Process, and Post-Employment Retaliation – Threatening Money Sanctions.

75.     The Original Complaint also asserted a cause of action against Mark Watkins and Tracy Pabst for Aiding and Abetting Unlawful Discrimination and Retaliation.

76.     The Original Complaint also requested relief in the form of economic compensatory damages; non-economic compensatory damages; liquidated, treble, punitive, or other exemplary damages; reinstatement or, in the alternative, front pay; reasonable attorneys' fees; costs and expenses; and pre- and post-judgment interest.

11

### *The First Amended Complaint*

77.     On August 10, 2021, Mr. Ekleberry filed a First Amended Complaint with Jury Demand (the "First Amended Complaint") in the Delaware County Action. A copy of the First Amended Complaint is attached as **Exhibit I**.

78.     In addition to Sam Dong, Mark Watkins, and Tracy Pabst, the First Amended Complaint also named Randy Kaiser as a defendant.

79.     The First Amended Complaint also alleged that at all relevant times, Randy Kaiser had supervisory authority over Mr. Ekleberry and "was an individual responsible for, and/or who participated in, the adverse employment action(s)" against him.

80.     The First Amended Complaint also alleged that Randy Kaiser was a resident of Delaware County, Ohio.

81.     The First Amended Complaint contained similar factual allegations to those in the Original Complaint, alleging that "[i]n October of 2018, Mr. Ekleberry had a flareup of his Crohn's Disease," leading him to be hospitalized.

82.     The First Amended Complaint further alleged that while Mr. Ekleberry was absent from work, Randy Kaiser, Mark Watkins, and Tracy Pabst discussed terminating his employment for "excessive absenteeism" and knew that his absences included those caused by his Crohn's Disease.

83.     The First Amended Complaint also alleged that Mr. Ekleberry then retained an attorney who sent an initial letter to Randy Kaiser, Mark Watkins, and Tracy Pabst "informing them of how they violated R.C. Chapter 4112 and engaged in disability discrimination by firing Mr. Ekleberry."

84. In addition, the First Amended Complaint alleged that Randy Kaiser, Mark Watkins, and Tracy Pabst hired an attorney "who responded with a nasty e-mail that claimed his clients supposedly had no knowledge of the Crohn's Disease and threatened to seek sanctions against Mr. Ekleberry if he filed a lawsuit under R.C. Chapter 4112."

85. The First Amended Complaint further alleged that the attorney "knew of the facts and law that support Mr. Ekleberry's claims and intended for his sanctions threat to dissuade Mr. Ekleberry from filing [the Delaware County Action]."

86. The First Amended Complaint asserted causes of action against Sam Dong for Disability Discrimination – Termination of Employment, Regarded-As Disability Discrimination – Termination of Employment, and Disability Discrimination – Failure to Accommodate.

87. The First Amended Complaint also asserted causes of action against Sam Dong, Randy Kaiser, Mark Watkins, and Tracy Pabst for Disability Discrimination – Termination of Employment, Regarded-As Disability Discrimination – Termination of Employment, Disability Discrimination – Failure to Accommodate, Disability Discrimination – Failure to Engage in the Interactive Process, and Post-Employment Retaliation – Threatening Monetary Sanctions.

88. The First Amended Complaint also asserted a cause of action against Randy Kaiser, Mark Watkins, and Tracy Pabst for Aiding and Abetting Unlawful Discrimination and Retaliation.

89. The First Amended Complaint also requested relief in the form of economic compensatory damages; non-economic compensatory damages; liquidated, treble, punitive, or other exemplary damages; reinstatement or, in the alternative, front pay; reasonable attorneys' fees; costs and expenses; and pre- and post-judgment interest.

90. On April 19, 2022, Mr. Ekleberry dismissed the Delaware County Action in its entirety, without prejudice to re-file.

**The Franklin County Action**

91.     On May 20, 2022, Mr. Ekleberry re-filed his complaint in the Court of Common Pleas for Franklin County, Ohio (the "Franklin County Action").  *See* Compl. with Jury Demand, *Ekleberry v. Sam Dong Ohio, Inc., et. al*, No. 22CV003458 (Ohio Ct. Com. Pl. originally filed May 20, 2022).  A copy of the Franklin County Action is attached as **Exhibit J**.

92.     The Franklin County Action contains similar allegations to those in the First Amended Complaint in the Delaware County Action.

93.     However, in the Franklin County Action, Mr. Ekleberry alleges that Mark Watkins is a resident of Franklin County, Ohio.

94.     In the Franklin County Action, Mr. Ekleberry also alleges that Tracy Pabst is a resident of Franklin County, Ohio.

95.     The Franklin County Action asserts causes of action against Sam Dong, Randy Kaiser, Mark Watkins, and Tracy Pabst for Disability Discrimination – Termination of Employment, Regarded-As Disability Discrimination – Termination of Employment, Disability Discrimination – Failure to Accommodate, and Retaliation – Termination of Employment.

96.     The Franklin County Action also asserts a cause of action against Randy Kaiser, Mark Watkins, and Tracy Pabst for Aiding and Abetting Unlawful Discrimination and Retaliation.

97.     The Franklin County Action also requests relief in the form of economic compensatory damages; non-economic compensatory damages; liquidated, treble, punitive, or other exemplary damages; reinstatement or, in the alternative, front pay; reasonable attorneys' fees; costs and expenses; and pre- and post-judgment interest.

98.     The Franklin County Action remains ongoing.

## SAM DONG'S NOTICES TO HANOVER

99.     On May 11, 2020, Sam Dong provided notice of the Charge of Discrimination to Hanover.

100.    Specifically, during the renewal process for the 2020-21 Policy, Sam Dong provided a Renewal Business Application (the "Renewal Application") to Hanover on May 11, 2020. A copy of the Application is attached as **Exhibit K**.

101.    In the Renewal Application, Sam Dong provided notice that "[a]n ex-employee, Scott A. Ekleberry (Mr. Ekleberry) has filed a charge of discrimination against Sam Dong Ohio, Inc. (Sam Dong) with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission."

102.    In the Renewal Application, Sam Dong further provided notice that "Mr. Ekleberry was terminated from his employment with Sam Dong because during the period of January 3, 2018 through October 26, 2018, he had 14.5 days of absence, triggering the absenteeism policy, which states that upon the tenth absence in a 12-month period, the employee's employment will be terminated. Mr. Ekleberry was aware of the policy and signed an acknowledgement of receipt of the same. A position statement, as well as, affidavits, documentation, and information, has been provided to the OCRC evidencing that Mr. Ekleberry's employment was terminated because of excess absenteeism and not because of any alleged disability and that Mr. Ekleberry never requested a reasonable accommodation for any alleged disability."

103.    In the Renewal Application, Sam Dong further stated, "All of this documentation can be provided, upon request."

104.    Hanover agreed to consider May 11, 2020 as the date of notice for the Charge of Discrimination. *See* **Exhibit L**.

15

105.    Upon information and belief, Hanover represented that it would agree to consider May 11, 2020 as the date of notice for the Charge of Discrimination to induce Sam Dong to pay another premium and renew the coverage for the 2020-21 Policy.

## HANOVER'S DENIALS OF COVERAGE

106.    On September 16, 2021, Hanover denied defense and indemnity coverage to Sam Dong, Randy Kaiser, Mark Watkins, and Tracy Pabst for the Charge of Discrimination, the Original Complaint in the Delaware County Action, and the First Amended Complaint in the Delaware County Action.  A copy of Hanover's September 16, 2021 denial letter is attached as **Exhibit L**.

107.    By email dated October 27, 2021, Randy Kaiser requested that Hanover reconsider its coverage denial.

108.    On November 11, 2021, Hanover issued a second denial letter.  A copy of Hanover's November 11, 2021 denial letter is attached as **Exhibit M**.

109.    On October 13, 2025, Plaintiffs responded via letter and again asked Hanover to reconsider its coverage position, in an attempt to avoid having to file this litigation.

110.    On November 4, 2025, Hanover denied coverage for a third time.  A copy of Hanover's November 4, 2025 denial letter is attached as **Exhibit N**.

## FIRST CAUSE OF ACTION
## (DECLARATORY JUDGMENT)

111.    The preceding paragraphs are incorporated herein by reference.

112.    Under 28 U.S.C. § 2201, in a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration.  *See* 28 U.SC. § 2201(a) (2025).

113.    Accordingly, Plaintiffs hereby request that the Court declare their rights under the Policies by issuing the following declaratory judgments:

- Hanover had a duty to defend Sam Dong against the Charge of Discrimination;

- Hanover had a duty to defend Sam Dong against the Delaware County Action;

- Hanover has a present duty to defend Sam Dong against the Franklin County Action;

- Hanover had a duty to defend Mark Watkins and Tracy Pabst against the Delaware County Action;

- Hanover has a present duty to defend Mark Watkins and Tracy Pabst against the Franklin County Action;

- Hanover had a duty to defend Randy Kaiser against the First Amended Complaint in the Delaware County Action;

- Hanover has a present duty to defend Randy Kaiser against the Franklin County Action; and

- Hanover has a duty to indemnify Plaintiffs for any settlement of or judgment entered against them jointly or severally in the Franklin County Action.

## SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT)

114.    The preceding paragraphs are incorporated herein by reference.

115.    Hanover's Policies were and are enforceable contracts.

116.    Plaintiffs paid the premiums for the Policies and otherwise performed all conditions precedent necessary for recovery under the Policies.

117.    By refusing to defend Plaintiffs against the Charge of Discrimination, the Delaware County Action, and the Franklin County Action, Hanover has committed nonperformance amounting to breaches of its contracts.

17

118.    By preemptively denying indemnity coverage to Plaintiffs for the Charge of Discrimination, the Delaware County Action, and the Franklin County Action, Hanover has committed nonperformance amounting to anticipatory breaches of its contracts.

119.    Plaintiffs have suffered extensive damages caused by Hanover's continued denial of its duty to defend and breaches of its contracts.

### THIRD CAUSE OF ACTION
### (BREACH OF GOOD FAITH AND FAIR DEALING)

120.    The preceding paragraphs are incorporated herein by reference.

121.    An insurer has a duty of good faith and fair dealing in investigating, handling, adjusting, and settling claims.

122.    An insurer fails to fulfill its duty of good faith when acting with disregard or demonstrable indifference toward the interests of its insured and when its acts and omissions lack a reasonable justification.

123.    Among other things, a failure to act in good faith on the part of the insurer can be proved by facts that tend to show a willingness on the part of the insurer to gamble with the insured's money in an attempt to save its own money, in the hope of escaping full liability imposed upon it by its policy.

124.    One way in which an insurer impermissibly acting in self-interest and having exclusive control over the investigation and settlement of a claim may be held liable to its insured for an amount in excess of its policy limits is if, as a result of bad faith, it fails to effect a settlement within the policy limits.

125.    This misconduct may be proved circumstantially.

126.    Hanover has failed to discharge its duty of good faith by refusing to fulfill its duty to defend, by erroneously contending that it will never have a duty to indemnify any possible

settlement or judgment of the underlying litigation, and by handling this matter in ways that are not reasonably justifiable, including providing erroneous and incomplete written coverage positions, failing to act timely with respect to this claim, and improperly investigating this claim.

127. The Franklin County Action remains ongoing.

128. By denying its contractual obligation to defend Plaintiffs, Hanover may deprive them of an opportunity to settle the Franklin County Action for an amount within the limits of the Policies.

129. Hanover's refusal to defend or settle the Franklin County Action for an amount within the limits of its Policies without a reasonable justification evinces its disregard and demonstrable indifference towards the interests of Plaintiffs, its insureds.

130. Hanover's refusal to defend or settle the Franklin County Action for an amount within the limits of its Policies further shows its willingness to gamble with Plaintiffs' money in an attempt to save its own money, in the hope of escaping full liability imposed upon it by its Policies.

131. Hanover further breached its duty of good faith and fair dealing by misrepresenting the plain meaning of its Policies in denying coverage to Plaintiffs for the Charge of Discrimination, the Delaware County Action, and the Franklin County Action.

132. Hanover also breached its duty of good faith and fair dealing by representing that it would accept May 11, 2020 as the date of notice for the Charge of Discrimination to induce Sam Dong to renew the coverage for the 2020-21 policy period, when it had no intention of ever providing coverage.

133. In addition to the damages Plaintiffs have already incurred resulting from Hanover's failure to fulfill its duty of good faith and fair dealing, including the defense expenses

that Plaintiffs have incurred as a result of Hanover's coverage denials, in the event that the Franklin County Action results in a judgment or settlement in excess of the limits of the Policies, Plaintiffs will seek damages from Hanover for the amount in excess of its policy limits for its bad-faith refusal to honor its contractual obligations to defend and settle the Franklin County Action.

## JURY DEMAND

134.    Plaintiffs hereby demand a jury trial on all issues triable of right by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request judgment in their favor against Defendant:

- declaring and adjudging the rights and obligations of the parties with respect to defense and indemnity coverage for Charge of Discrimination, the Delaware County Action, and the Franklin County Action;

- for compensatory damages, together with pre- and post-judgment interest;

- requiring Hanover to pay Plaintiffs' reasonable attorneys' fees, costs, and expenses incurred in the defense against the Charge of Discrimination, the Delaware County Action, and the Franklin County Action;

- requiring Hanover to indemnify Plaintiffs for any settlement of or judgment entered against them jointly or severally in the Franklin County Action;

- requiring Hanover to pay Plaintiffs' reasonable attorneys' fees in this action;

- requiring Hanover to pay Plaintiffs for the costs of suit and expenses incurred herein;

- requiring Hanover to pay punitive damages for its bad-faith conduct; and

- providing for all such other and further relief, including any appropriate equitable relief, as the Court may deem just and proper.

Dated: November 21, 2025                    Respectfully submitted,

                                            *s/ K. James Sullivan*
                                            K. James Sullivan (0074211)
                                            *Trial Attorney*
                                            Tae Andrews (motion for admission pending)
                                            **CALFEE, HALTER & GRISWOLD LLP**
                                            The Calfee Building
                                            1405 East Sixth Street
                                            Cleveland, OH 44114-1607
                                            Telephone: (216) 622-8200
                                            Facsimile: (216) 241-0816
                                            KJSullivan@Calfee.com
                                            TAndrews@Calfee.com

                                            Gretchen L. Whaling (0096780)
                                            **CALFEE, HALTER & GRISWOLD LLP**
                                            1200 Huntington Center
                                            41 South High Street
                                            Columbus, Ohio 43215-3465
                                            Telephone: (614) 621-1500
                                            Facsimile: (614) 621-0010
                                            GWhaling@Calfee.com

                                            *Attorneys for Plaintiffs*